**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

AMY BEYERS and GLENN ZABEL, individually and as representatives of a class of similarly situated persons, on behalf of the CATERPILLAR, INC. EMPLOYEE HEALTH, LIFE and DISABILITY BENEFIT PROGRAM and the CATERPILLAR, INC. RETIREE BENEFIT PROGRAM,

Plaintiffs,

v.

CATERPILLAR, INC., THE CATERPILLAR INC. BENEFIT FUNDS COMMITTEE, THE CATERPILLAR INC. BENEFITS ADMINSTRATIVE COMMITTEE, THE CATERPILLAR INC. BENEFITS COMPENSATION AND HUMAN RESOURCES COMMITTEE, and DOES No. 1-30, Whose Names Are Currently Unknown,

Defendants.

Case No. 1:26-cv-9260

**CLASS ACTION COMPLAINT**

Plaintiffs, Amy Beyers and Glenn Zabel (collectively, "Plaintiffs"), individually and as representatives of the Caterpillar Inc. Employee Health, Life and Disability Benefit Program (the "Active Employee Plan") and the Caterpillar Inc. Retiree Benefit Program (the "Retiree Plan") (collectively, the "Plans") and a proposed class (defined below) of participants and beneficiaries in the Plans, as and for their Complaint allege as follows:

**I. PRELIMINARY STATEMENT**

1. Plaintiffs bring this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, on behalf of the Plans and the Class, against Defendants, Caterpillar Inc. ("Caterpillar"), the Caterpillar Inc. Benefit Funds Committee (the "Benefit Funds Committee"), the Caterpillar Inc. Benefits Administrative Committee (the "Benefits Administrative Committee"), the Caterpillar, Inc. Compensation and Human Resources Committee (the "Compensation and Human Resources Committee") (with the Benefits Funds Committee and the Benefits Administrative Committee, the "Committees"), and Does No. 1-30, who are members of the Committees or other fiduciaries of the Plans and whose names are currently unknown (collectively, "Defendants"), for breaches of fiduciary duty.

2. This action arises out of Defendants' failure to prudently and loyally monitor the healthcare coverage options in the Plans, to the significant detriment of the Plans' participants and beneficiaries. In violation of ERISA, Defendants: (1) failed to prudently and loyally select and monitor the Plans' preferred provider organization ("PPO") medical insurance options; (2) allowed the Plans' low-deductible ("LD") health insurance options to be financially dominated by one of the high-deductible ("HD") options; and (3) failed to disclose this material information to the Plans' participants. Recovery of all losses suffered by the Plans is sought for the period

beginning six years before the date this action is filed and continuing to the date of judgment (the "Class Period").

3. Mismanagement of employer-sponsored healthcare plans has severe consequences. As of 2023, 53.7% of civilian Americans relied upon their employer or union for health insurance coverage.[1] This employment-based coverage is by far the most common type of health insurance coverage in the United States,[2] and along with retirement benefits, makes up 13% of total national compensation.[3] Americans also devote a substantial percentage of their annual expenditures to healthcare. In 2023, healthcare accounted for 8% of all consumer expenditures.[4] As such, it is crucial that each health insurance option offered by employers provides unique advantages to participants without needlessly wasting their money.

4. To this end, employers must confirm that no health insurance option is financially dominated by another, such that it is less advantageous to employees no matter the level of health care expenditure or services consumed. In economic terms, an option is financially dominated when it provides the same financial value to a consumer as an alternative yet costs more than this alternative. A health insurance option is financially dominated when there is another option which results in lower total expenses to participants (inclusive of premiums)

---

[1] Katherine Keisler-Starkey and Lisa N. Bunch, Health Insurance Coverage in the United States: 2023, U.S. CENSUS BUREAU (Sept. 2024), https://www2.census.gov/library/publications/2024/demo/p60-284.pdf (last visited June 21, 2026).

[2] *Id.*

[3] Amy Monahan and Barak D. Richman, Hiding in Plain Sight: ERISA's Cure for the $1.4 Trillion Health Benefits Market (2025), YALE J. ON REG., (Vol. 42, No.1), at 237 n.1, 263-264 (the full cost of employer sponsored health insurance is a compensation expense that reduces wages accordingly).

[4] Consumer Expenditures – 2024, Bureau of Labor Statistics, U.S. DEP'T OF LABOR (Dec. 19, 2025), https://www.bls.gov/news.release/pdf/cesan.pdf (last visited June 21, 2026).

irrespective of the amount of medical care received.[5] Simply put, the dominated option costs more but provides no additional benefit, regardless of level of spending or risk aversion.

5. In managing the Plans, Defendants have selected and maintained the LD and HD options, purportedly to address the diverse needs of its employees and retirees.[6] The LD options are comprised of the "BCBS National" and the "UHC Choice Plus," which are referred to in plan literature as "Traditional Plans." The HD options are comprised of the "UHC Consumer Choice" and the "UHC Consumer Max," which are referred to in plan literature as "Consumer Directed Health Plans." The Traditional Plans offer higher premiums in exchange for a lower annual deductible, while the Consumer Directed Health Plan options offer lower premiums but higher annual deductibles. Together, these four healthcare plan options constitute health insurance plans pursuant to ERISA.

6. Through its Plan documents, Caterpillar falsely apprises participants in the Plans that if they choose an option with lower monthly premiums (and higher deductibles), they will likely pay more in out-of-pocket costs—through copayments, coinsurance, deductibles—than they would if they chose an option with higher monthly premiums (and lower deductibles). This representation is false; the HD UHC Consumer Choice Plan provides lower out-of-pocket expenses across all levels of medical spending, meaning the UHC Consumer Choice option financially dominates the LD BCBS National and UHC Choice Plus options. Defendants have breached their fiduciary duties of prudence and loyalty by allowing the Traditional Plans to be

---

[5] *See* Saurabh Bhargava, George Loewenstein, and Justin Sydnor, Choose to Lose: Health Plan Choices from Menu with Dominated Options, THE QUARTERLY JOURNAL OF ECONOMICS (Vol. 132, Issue 3), at 1321.

[6] The same four options are offered in the Active Employee Plan and the Retiree Plan, though the financial terms of the LD and HD options offered in each Plan differ. As set forth in greater detail below, one of the HD options financially dominates the two LD options in both Plans.

financially dominated by the UHC Consumer Choice Plan. Defendants should have been cognizant of the dominated nature of the LD options but were not, and instead failed to communicate this material information to participants in the Plans, in violation of ERISA.

7. The different options in an employer-sponsored healthcare benefit program should offer employees a tradeoff—otherwise, there would be no reasoned basis to offer multiple options when certain options are never in the best interest of participants. An appropriate program offering multiple health plan offers a high-deductible option (with a lower premium) that is less expensive than a low deductible option (with a higher premium) at low levels of medical spend; but the high deductible option comes with a higher deductible and higher out of-pocket maximums, causing it to be more expensive than the low deductible option after the employee incurs a moderate level of medical bills. Instead, Defendants offer a Consumer Directed Health Plan HD option that provides lower out-of-pocket expenses ***for all levels of medical spending***. This means the UHC Consumer Choice HD option financially dominates the LD BCBS National and UHC Choice Plus PPO options.

8. Defendants' management of the Plans' LD options is subject to ERISA's strict fiduciary duties. 29 U.S.C. § 1104. These duties are "'the highest known to the law.'" *Keach v. U.S. Trust Co. N.A.*, 313 F. Supp. 2d 818 (C.D. Ill. 2004) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272, n. 8 (2d Cir. 1982)). Fiduciaries must act with the "care, skill, prudence, and diligence" that a "prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," 29 U.S.C. § 1104(a)(1)(B), and "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A). Defendants have breached their fiduciary duties of prudence and loyalty by

assembling a menu of options where there is *no* financial benefit to selecting the BCBS National and UHC Choice Plus options.

9. Defendants are duty bound to disclose this to the Plan's participants at large, as they possess "an affirmative obligation to communicate material facts affecting the interests of beneficiaries." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 466 (7th Cir. 2010). But they have failed to do so, in breach of their fiduciary obligations to participants. On the contrary, Defendants falsely suggest to participants that the BCBS National and UHC Choice Plus options are the most financially advantageous options at certain levels of medical spending.

10. Offering financially dominated options like the BCBS National and UHC Choice Plus options imprudently and disloyally shifts the burden from the employer to participants to determine the financial benefits of each option including the potentially dominated nature of the options—a task requiring a complicated mathematical computation—despite the informational asymmetries facing participants compared to Defendants. The consequences of Defendants' nondisclosure of the economic reality of these plans are significant. In a 2017 study, researchers found that 61% of employees selected a financially dominated option when one was offered.[7]

11. The idea that individuals willingly enroll in a financially dominated option to achieve lower deductibles has been debunked, and a lack of literacy and understanding of complex insurance products is instead the overwhelming cause of this phenomenon. When the consequences of selecting a financially dominated option were shared with participants, researchers found this reduced the share of subjects choosing a dominated option to 18%.[8] When the focus was placed upon the enrollment decisions of individuals deemed to have a high

---

[7] *See* Bhargava, et al., Choose to Lose: Health Plan Choices from Menu with Dominated Options, at 1321.

[8] *Id.* at 1325.

understanding of insurance, it was found that less than 2% chose a dominated option.[9] This underscores the importance of offering prudent, non-dominated health insurance options to participants, and of disclosing the dominated nature of an option where on is offered. Defendants have failed on both scores.

12. Defendants' decision to offer the financially dominated BCBS National and UHC Choice Plus options and the failure to disclose their dominated nature to participants has resulted in the Plans and their participants paying wholly excessive and unnecessary healthcare expenses in the form of lost wages due to excessive premiums unaccompanied by any reduced out-of-pocket.

13. Based on this conduct, Plaintiffs assert claims against Defendants for breaches of the fiduciary duties of prudence and loyalty.

## II. THE PARTIES

14. Plaintiff Beyers is a resident of Shirley, Indiana. Plaintiff Beyers participated in the Active Employee Plan from approximately November 2021 through March 2025. During Plaintiff Beyers' time as a participant in the Active Employee Plan, she was enrolled in the "Employee + Children" coverage level of the UHC Choice Plus option. Plaintiff Beyers has been financially injured by Defendants' unlawful conduct, and her compensation would have been higher if Defendants had not violated ERISA as described herein.

15. Plaintiff Zabel is a resident of Marissa, Illinois. Plaintiff Zabel is a current participant in the Active Employee Plan and has been enrolled since 2016. During Plaintiff Zabel's time in the Plan, he has been enrolled in the "Family" coverage level of the BCBS National option. Plaintiff Zabel has been financially injured by Defendants' unlawful conduct,

---

[9] *Id.*

and his compensation would have been higher if Defendants had not violated ERISA as described herein.

16. Caterpillar is a Delaware corporation that, from the beginning of the Class Period until 2022, was headquartered in Deerfield, Illinois. In 2022, Caterpillar moved its headquarters from Deerfield, Illinois to Irving, Texas. Caterpillar is a global manufacturer of construction and mining machinery, and also specializes in engines, turbines, and locomotives. Caterpillar is the Plan Administrator for the Plans. As the administrator of the Plans, Caterpillar exercises discretionary authority or control with respect to the administration of the Plans and management and disposition of the Plans' assets.

17. Caterpillar delegated responsibility for the Plans' financial matters to the Benefit Funds Committee. The Benefit Funds Committee maintained its address at Caterpillar's corporate headquarters in Deerfield, Illinois until 2022, and thereafter in Irving, Texas. The Benefit Funds Committee and its members are appointed by Caterpillar.

18. Caterpillar delegated responsibility for the Plans' non-financial matters to the Benefits Administrative Committee. The Benefits Administrative Committee maintained its address at Caterpillar's corporate headquarters in Deerfield, Illinois until 2022, and thereafter in Irving, Texas. The Benefits Administrative Committee and its members are appointed by Caterpillar.

19. The Compensation and Human Resources Committee was established in 2025 to "assist Caterpillar's Board of Directors in fulfilling its responsibilities in connection with the compensation of the Company's directors, officers and employees, and [] providing general

oversight over human capital."[10] Among the Compensation and Human Resources Committee's obligations is the "exercise [of] oversight with respect to the establishment, maintenance and administration of the Company's compensation and benefits plans for employees other than Officers."[11] The Compensation and Human Resources Committee "shall approve, and recommend standards for the Company's . . . retirement and other benefit plans."[12] The Compensation and Human Resources Committee maintains its address at Caterpillar's corporate headquarters in Irving, Texas. The Benefits Administrative Committee and its members are appointed by Caterpillar's Board of Directors.

20. Does No. 1-30 are members of the Committees and, by virtue of their membership, as well as their maintenance and exercise of control over the assets of the Plans, are fiduciaries of the Plans. Despite reasonable and diligent efforts, Plaintiffs are currently unable to determine the membership of the Committees or the identity of the other fiduciaries of the Plans, as this information is not publicly available. As such, these Defendants are named Does 1-30 as placeholders. Plaintiffs will move, pursuant to Federal Rules of Civil Procedure 15, to amend this Complaint to name the members of the Committees and other responsible individuals as defendants as soon as their identities are discovered.

## III. JURISDICTION AND VENUE

21. Plaintiffs bring this action pursuant to 29 U.S.C. § 1132(a)(2) and (3), which provide that participants in an employer-sponsored health insurance plan may pursue a civil action on behalf of the plan to remedy breaches of fiduciary duties and other prohibited conduct,

---

[10] Charter of the Caterpillar Inc. Compensation and Human Resources Committee of the Board of Directors (April 9, 2025), at 1.

[11] *Id.*

[12] *Id*. at 3.

and to obtain monetary and appropriate equitable relief as set forth in 29 U.S.C §§ 1109 and 1132.

22. This case presents a federal question under ERISA, and therefore the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). In addition, ERISA provides nationwide service of process. *See* 29 U.S.C. § 1132(e)(2).

23. This Court has personal jurisdiction over Defendants and venue is proper pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because this is the district where the Plans were administered until at least 2022. In addition, this is the district where the breaches of fiduciary duties giving rise to this action occurred and, until 2022, where Defendants were headquartered. Moreover, since 2022, Defendants have maintained a substantial continuing operational presence in this district. Indeed, when Caterpillar announced the move of its corporate headquarters from this district to Texas, it stated "Illinois remains the largest concentration of Caterpillar employees anywhere in the world."[13] As such, the "largest concentration" of participants affected by Defendants' at-issue conduct is in Illinois.

## IV. FACTUAL ALLEGATIONS

### A. Caterpillar Sponsors the ERISA-Governed Healthcare Plans

24. The Active Employee Plan was established January 1, 2011, and provides certain healthcare benefits to eligible employees of Caterpillar. The Retiree Plan (formerly known as the Caterpillar Inc. Group Insurance Program) was established on January 1, 1955, and provides similar traditional healthcare benefits to eligible individuals who retired from Caterpillar or a subsidiary or affiliate of Caterpillar that adopted the Retiree Plan with Caterpillar's consent

---

[13] *See* Caterpillar to Relocate Global Headquarters to Dallas-Fort Worth Area, CATERPILLAR (June 14, 2022), https://www.caterpillar.com/en/news/corporate-press-releases/h/Caterpillar-to-Relocate-Global-Headquarters-to-Dallas-Fort-Worth-Area.html (last visited June 21, 2026).

("Participating Companies"). Both Plans offer insurance packages including medical, dental, vision, and prescription drug coverage, as well as life insurance and certain voluntary benefits programs.

25. The HD coverage options in both Plans include a Health Savings Account ("HSA") component that allows participants to save for future medical expenses on a pre-tax basis and also permits Caterpillar to make certain contributions to the participant accounts.[14] The HSA option may be used to pay the cost of qualified health care expenses as defined by the Internal Revenue Service. Any amounts contributed by Caterpillar necessarily reduce the total amount paid by participants to receive healthcare benefits. Active Employee Plan participants enrolled in the LD coverage options are ineligible for an HSA but may utilize a Flexible Spending Account ("FSA").[15] Like an HSA, participants with an FSA may still set aside pre-tax wages to pay for future medical care, but do not get the benefit of any employer contributions made by Caterpillar.[16]

26. Pursuant to certain eligibility restrictions applicable to different benefits, each of the following classifications of employees of Caterpillar or one of the Participating Companies are eligible to participate in the Active Employee Plan: management, salaried or non-bargained hourly, part-time, international service, supplement, and temporary. Generally, retirees who, at

[14] As of January 2025, for both the Active Employee Plan and Retiree Plan, Caterpillar's HSA contributions amount to: (a) for the UHC Consumer Choice plan, $300 for individuals and $600 for the employee/retirees who have enrolled dependents; and (b) for the UHC Consumer Max plan $550 for individual coverage and $1,100 for those with enrolled dependents.

[15] Participants enrolled in either LD option in the Retiree Plan do not have the option to establish an FSA.

[16] As of January 2025, for those enrolled in one of the LD options, the annual FSA contribution limit is $3,200/year for employees obtaining individual coverage and $5,000/year for those with enrolled dependents. Caterpillar offers no matching contributions to an FSA, and up to $640 of unused FSA funds can be rolled over year-to-year for future use.

the time of their retirement, were classified as a salaried, management, non-bargained hourly, bargained hourly employee whose collective bargaining agreement provides for participation in the Retiree Plan, or part-time employee of Caterpillar or a Participating Company and who were participants in the Active Employee Plan are eligible for participation in the Retiree Plan.

27. Through both Plans, Caterpillar offers different low and high-deductible coverages, depending on the number of dependents that a participant opts to enroll and the family structure. Coverage levels for the LD and HD options in the Active Employee Plan include: "Employee", "Employee + Spouse", "Employee + Children" and "Family." Coverage levels for the LD and HD options in the Retiree Plan include: "Retiree", "Spouse Only", "Retiree + Spouse", "Retiree + Children", and "Family." Within each LD and HD option, the monthly premiums paid by an enrolled participant are based on the coverage level selected, employment status (whether the individual is full-time or part-time), and the participant's salary.

28. Critically, there is no difference in healthcare coverage or benefits for participants in the Traditional Plans and the Consumer Directed Health Plans (*i.e.*, the LD and the HD options). The only differences between these two categories of health plans are the financial terms: premium amounts, coinsurance rates, copayments, maximum out-of-pocket expenses, and eligibility for HSA or FSA accounts. Participants in the Traditional Plans may choose to receive care from any licensed doctor, hospital, or facility but will incur lower out-of-pocket expenses for "In-Network" services (that is, services performed by members of the Plans' BCBS National and UHC Choice Plus Plans PPO provider network). Traditional Plans do not offer participants greater coverage or benefits.

29. The medical, dental, vision, and prescription drug benefits offered under the Plans are self-insured by Caterpillar. Through this self-insured mechanism, as claims are made,

covered benefits are paid from Caterpillar's general assets. In addition, Caterpillar has administrative services contracts with third-party administrators to decide and process claims.

30. According to the most recent Form 5500 filings for the Plans, the Active Employee Plan had 41,831 participants as of December 31, 2025; the Retiree Plan had 21,327 participants as of December 31, 2024.[17]

### B. Defendants Breached their Fiduciary Duties by Offering Employees and Retirees Financially Dominated Healthcare Options

31. Defendants are, and have been throughout the Class Period, required to administer and manage the Plans in accordance with ERISA's strict fiduciary duties of loyalty and prudence, under which they are obligated to act solely in the interests of participants and beneficiaries and to employ a reasoned, prudent decision-making process in selecting and continually monitoring and evaluating plan benefits and expenses. These fiduciary obligations apply equally to welfare benefit plans, including employer-sponsored health plans, and require fiduciaries to identify and remove imprudent arrangements within a reasonable time.

32. Defendants breached their fiduciary duties to the Plans by offering two coverage options (the LD/Traditional options) which were, across all levels of medical spending, financially dominated by the UHC Consumer Choice option, rendering all participants and beneficiaries enrolled in the LD options financially worse off than they would have been in the UHC Consumer Choice option. Defendants further breached their fiduciary duty by failing to advise participants of the financial domination within the coverage alternatives. Indeed, offering

[17] Form 5500 is the Department of Labor form on which the sponsor or administrator of an employee benefit plan governed by ERISA reports information concerning the participant demographics, qualification, financial condition, investments, and operations of the plan. *See* 2025 Form 5500 of the Caterpillar Inc. Employee Health, Life and Disability Benefit Program, at 2; 2024 Form 5500 of the Caterpillar Inc. Retiree Benefit Program, at 2.

financially dominated option(s) like the Traditional Plans imprudently shifts the burden from the employer to participants to determine the financial benefits of each option at each level of spending, including the potentially dominated nature of the options, a task requiring a complicated mathematical computation to reveal.

33. As fiduciaries, Defendants are required to ensure that costs incurred by participants are reasonable. *Tibble v. Edison Int'l*, 575 U.S. 523, 529-30 (2015). "Wasting beneficiaries' money is imprudent." *Hughes v. Northwestern Univ.*, 63 F. 4th 615, 627 (7th Cir. 2023) (internal quotation marks omitted).

34. Defendants are additionally obligated to disclose material information to participants. "The duty to disclose material information is the core of a fiduciary's responsibility." *Kenseth*, 610 F.3d at 466 (citing *Eddy v. Colonial Life Ins. CO. of Am.*, 919 F.2d 747, 750 (D.C. Cir. 1990). Fiduciaries have an obligation to not mislead, withhold, or misrepresent material information to participants as well as an affirmative obligation to disclose material information impacting interests of the participants. *See Kenseth,* 610 F.3d 452.

35. Despite these obligations, Defendants failed to undertake the requisite prudent process to assess the full economic impact of the healthcare options it offered participants through the Plans. Defendants' decision to offer the financially dominated BCBS National and UHC Choice Plus options, combined with their failure to disclose the dominated nature of these options to participants, have resulted in the Plans and their participants paying wholly excessive and unnecessary healthcare expenses. These costs take the form of lost compensation due to excessive premiums unaccompanied by any reduced out-of-pocket expenses.

36. In a properly designed healthcare benefit program, participants who elect an HD option should receive a meaningful economic benefit—typically through lower premiums,

employer HSA contributions, or both—in exchange for assuming greater upfront financial risk, while participants who elect a LD option pay more in premiums in return for greater first-dollar coverage and reduced cost-sharing. Consequently, under a properly balanced program menu, the lower premiums associated with the HD option are expected to be offset by greater participant cost-sharing when healthcare services are utilized, while the higher premiums associated with the LD option are expected to purchase meaningfully lower out-of-pocket costs. Absent this tradeoff, one option is economically dominated by the other and does not serve the interests of participants in any respect.

37. In both the Active Employee Plan and the Retiree Plan, the UHC Consumer Choice option dominates the BCBS National and UHC Choice Plus options.

38. To illustrate with a simplified example, for an individual obtaining "Employee only" coverage through the Active Employee Plan, total annual premiums are as follows: $1,740 through BCBS National; $1,200 through UHC Choice Plus; $756 through UHC Consumer Choice (the dominating option). These differences yield a net advantage of $984 and $444 to the individual enrolling in the UHC Consumer Choice option over the BCBS National option and the UHC Choice Plus option, respectively. An individual enrolled in the UHC Consumer Choice option also benefits from a $300 contribution from Caterpillar to their HSA, which widens the initial financial gap to $1,284 and $744, respectively. The out-of-pocket maximum spend of the BCBS National option is $2,500, which is just $1,000 less than the maximum for the UHC Consumer Choice option, an amount insufficient to offset the $1,284 advantage held by the HD option through lower premiums and the HSA benefit. The UHC Choice Plus option derives no advantage against the UHC Consumer Choice option from out-of-pocket maximum spend, as the max spend for both plans are identical.

39. As depicted in the charts below, this experience holds across all coverage types in each of the Plans, with the UHC Consumer Choice option offering meaningfully superior economic benefits to participants, with no reduction in coverage or benefits.

Active Employee Plan - BCBS National (LD) vs UHC Consumer Choice (HD)

| | Annual Premiums | | | Out of Pocket Maximum | | |
|---|---|---|---|---|---|---|
| | BCBS National | UHC Consumer Choice | Employer HSA Contribution | BCBS National | UHC Consumer Choice | Difference in Total Medical Spend |
| Employee only | $ 1,740 | $ 756 | $ 300 | $ 2,500 | $ 3,500 | $ 284 |
| Employee + spouse | $ 4,356 | $ 1,896 | $ 600 | $ 5,000 | $ 7,000 | $ 1,060 |
| Employee + children | $ 3,480 | $ 1,512 | $ 600 | $ 5,000 | $ 7,000 | $ 568 |
| Family | $ 6,096 | $ 2,652 | $ 600 | $ 5,000 | $ 7,000 | $ 2,044 |

Active Employee Plan - UHC Choice Plus (LD) vs UHC Consumer Choice (HD)

| | Annual Premiums | | | Out of Pocket Maximum | | |
|---|---|---|---|---|---|---|
| | UHC Choice Plus | UHC Consumer Choice | Employer HSA Contribution | UHC Choice Plus | UHC Consumer Choice | Difference in Total Medical Spend |
| Employee only | $ 1,200 | $ 756 | $ 300 | $ 3,500 | $ 3,500 | $ 744 |
| Employee + spouse | $ 3,000 | $ 1,896 | $ 600 | $ 7,000 | $ 7,000 | $ 1,704 |
| Employee + children | $ 2,400 | $ 1,512 | $ 600 | $ 7,000 | $ 7,000 | $ 1,488 |
| Family | $ 4,200 | $ 2,652 | $ 600 | $ 7,000 | $ 7,000 | $ 2,148 |

Retiree Plan - BCBS National (LD) vs UHC Consumer Choice (HD)

| | Annual Premiums | | | Out of Pocket Maximum | | |
|---|---|---|---|---|---|---|
| | BCBS National | UHC Consumer Choice | Employer HSA Contribution | BCBS National | UHC Consumer Choice | Difference in Total Medical Spend |
| Retiree only | $ 3,132 | $ 1,356 | $ 300 | $ 2,500 | $ 3,500 | $ 1,076 |
| Retiree + spouse | $ 7,836 | $ 3,396 | $ 600 | $ 5,000 | $ 7,000 | $ 3,040 |
| Retiree + children | $ 6,264 | $ 2,712 | $ 600 | $ 5,000 | $ 7,000 | $ 2,152 |
| Retiree + family | $ 10,968 | $ 4,752 | $ 600 | $ 5,000 | $ 7,000 | $ 4,816 |

Retiree Plan - UHC Choice Plus (LD) vs UHC Consumer Choice (HD)

| | Annual Premiums | | | Out of Pocket Maximum | | |
|---|---|---|---|---|---|---|
| | UHC Choice Plus | UHC Consumer Choice | Employer HSA Contribution | UHC Choice Plus | UHC Consumer Choice | Difference in Total Medical Spend |
| Retiree only | $ 2,160 | $ 1,356 | $ 300 | $ 3,500 | $ 3,500 | $ 1,104 |
| Retiree + spouse | $ 5,400 | $ 3,396 | $ 600 | $ 7,000 | $ 7,000 | $ 2,604 |
| Retiree + children | $ 4,320 | $ 2,712 | $ 600 | $ 7,000 | $ 7,000 | $ 2,208 |
| Retiree + family | $ 7,560 | $ 4,752 | $ 600 | $ 7,000 | $ 7,000 | $ 3,408 |

40. Not limited to scenarios in which the full out of pocket maximum is reached, the UHC Consumer Choice option financially dominates the two LD options across all levels of

medical spending, in both Plans. As a further example, and as shown in the graphs below, an employee enrolled in the Active Employee Plan with the "Family" coverage level will spend more on the same exact medical care in either the BCBS National or UHC Choice Plus options than the UHC Consumer Choice alternative. This remains true regardless of whether a participant and their family incur no medical expenses, moderate medical expenses, or expenses sufficient to reach the Plan's out-of-pocket maximum, as illustrated below.






41. No Caterpillar employee or retiree benefited from enrolling in the LD options instead of the UHC Consumer Choice option. Offering these financially dominated options, when the average participant is unlikely to (and should not be required to) be able to independently determine such domination exists, represents a severe breach of Defendants' fiduciary duty. Defendants' failure to communicate to participants the material information that participants' payroll deductions to pay the higher premiums of the LD options provided no additional financial benefit over one of the HD options (which bore considerably lower premiums) was a further breach of fiduciary duty.

## V. ERISA STANDARDS

42. As fiduciaries of the Plan, Defendants are subject to the strict fiduciary duties of loyalty and prudence that ERISA imposes. 29 U.S.C. § 1104(a) states, in relevant part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -
>
> (A) for the exclusive purpose of
>
> (i.) providing benefits to participants and their beneficiaries; and
>
> (ii.) defraying reasonable expenses of administering the plan;
>
> [and]
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

43. Under ERISA, any party that exercises authority or control over plan assets, including the selection and retention of health insurance policies and service providers, must act prudently and solely in the interest of participants in a plan.

44. ERISA's fiduciary duties are the "highest known to the law" and must be performed with an "eye single" to the interests of participants. *Halperin v. Richards*, 7 F.4th 534, 546 (7th Cir. 2021) (quoting Donovan v. Bierwirth, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

45. ERISA also imposes liability on plan fiduciaries for certain actions by their co-fiduciaries. Specifically, 29 U.S.C. § 1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>
> (2) if, by his failure to comply with section 404(a)(l) in the administration of his specific responsibilities which give risk to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

46. 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. § 1109, which provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109.

## VI. CLASS ACTION ALLEGATIONS

47. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plans to bring an action on behalf of the Plans to seek the remedies provided by 29 U.S.C. § 1109(a). In addition, 29 U.S.C. § 1132(a)(3) authorizes any participant or beneficiary to bring suit for injunctive or other equitable relief. Plaintiffs seek certification of this action as a class action pursuant to these statutory provisions and Federal Rule of Civil Procedure 23.

48. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the following proposed class ("Class"):

> All participants and beneficiaries of the Caterpillar Inc. Employee Health, Life and Disability Benefit Program and the Caterpillar Inc. Retiree Benefit Program enrolled in the BCBS National or UHC Choice Plus options at any time on or after June 17, 2020, and continuing to the date of judgment, or such earlier date that the Court determines is appropriate and just.

49. **Numerosity**. Plaintiffs are informed and believe that there are at least thousands of Class members throughout the United States based on, *inter alia*, the participant counts reported in the Plans' Form 5500 filings. As a result, the members of the Class are so numerous that their individual joinder in this action is impracticable.

50. **Commonality**. There are numerous questions of fact and law that are common to Plaintiffs and all the members of the Class, including, but not limited to the following:

A. Whether Defendants failed and continue to fail to discharge their duties with respect to the Plans solely in the interest of the participants of the Plans for the exclusive purpose of providing benefits to participants and their beneficiaries;

B. Whether Defendants breached their duties under ERISA by engaging in the conduct described herein;

C. The proper form of equitable and injunctive relief; and

D. The proper measure of monetary relief.

40. **Typicality**. Plaintiffs, who are members of the Class, have claims that are typical of all members of the Class. Plaintiffs participated in the Plans as full-time employees of Caterpillar and were subject to the same preferred provider organization options as other Class members. Plaintiffs' claims and all Class members' claims arise out of the same uniform course of conduct by Defendants and arise under the same legal theories applicable to all other members of the Class. In addition, Plaintiffs seek relief for the Plans under the same remedial theories that are applicable to all Class members.

41. **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of all Class members. Plaintiffs have no conflicts of interest with other Class members and no interests that are different from any other Class other members. Plaintiffs have retained competent counsel experienced in class actions and other complex litigation, including ERISA class actions.

42. **Potential Risks and Effects of Separate Actions**. The prosecution of separate actions by individual Class members would create a risk of: (1) inconsistent or varying adjudications for individual Class members that would establish incompatible standards of conduct for Defendants; or (2) adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of other Class members not parties to the individual adjudications or would substantially impair or would substantially impair or impede their ability to protect their interests.

43. **Predominance**. Common questions of law and fact predominate over questions affecting only individual Class members. The Court and the parties will spend the vast majority of their time working to resolve these common issues. Indeed, virtually the only individual issues of significance will be the exact amount of damages each Class member will recover, the calculation of which will ultimately be a ministerial function which does not bar Class certification.

44. **Superiority**. A class action is superior to all other feasible alternatives for the resolution of this matter. The vast majority, if not all, of the Class members are unaware of Defendants' breaches of fiduciary duty, such that they will never bring suit individually. Further, even if they were aware of the claims they have against Defendants, the claims of virtually all Class members would be too small to economically justify individual litigation.

Finally, individual litigation of multiple cases would be highly inefficient, a waste of the Court's and the parties' resources, and could potentially lead to inconsistent results that would be contrary to the interests of justice.

45. **Manageability**. This case is well-suited for class action treatment and can be easily managed as such since evidence of both liability and damages can be adduced and presented on a Class-wide basis while the allocation and distribution of damages to Class members will be essentially a ministerial function.

46. Defendants have acted on grounds generally applicable to the Class by uniformly subjecting them to the breaches of fiduciary duty and other violations of ERISA described above. Accordingly, injunctive relief, legal and equitable monetary relief, and declaratory relief are appropriate with respect to the Class as a whole.

47. Plaintiffs' counsel will fairly and adequately represent the interests of the Class and are best able to represent the interests of the Class under Federal Rule of Civil Procedure 23(g). Moreover, treating this case as a class action is superior to proceeding on an individual basis, and there will be no difficulty in managing this case as a class action.

48. Therefore, this action should be certified as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(1) and/or 23(b)(3).

**COUNT I**
**(Breach of Duty of Prudence Under ERISA Against All Defendants—**
**29 U.S.C. §§ 1104(a)(1)(B), 1109, 1132(a)(2)-(3))**

49. Plaintiffs incorporate by reference the allegations in paragraphs 1-48.

50. Defendants are or were fiduciaries of the Plans under 29 U.S.C. § 1002(21).

51. 29 U.S.C. § 1104 imposes a fiduciary duty of prudence upon Defendants in connection with the administration of the Plans and the selection and monitoring of the Plans' healthcare options.

52. The scope of this fiduciary duty includes managing the Plans solely in the interest of their participants and beneficiaries and with appropriate care, skill, diligence, and prudence. Defendants are directly responsible for ensuring that each healthcare option within the Plans is reasonable, evaluating and monitoring the Plans' healthcare options on an ongoing basis, and removing imprudent healthcare options.

53. Defendants breached their fiduciary duties by offering a menu of healthcare options to participants of the Plans in which the BCBS National and the UHC Choice Plus options offered no financial or medical benefit to their enrollees when compared to the UHC Consumer Choice option.

54. A prudent fiduciary would have monitored premiums, deductibles, coinsurance rates, and out-of-pocket maximums of the various options to ensure that no option was financially dominated by any other option. Defendants failed to take these prudent measures to monitor the Plans' coverage alternatives to ensure that enrollees in the BCBS National and the UHC Choice Plus options received a financial benefit and therefore breached their duty of prudence to the Plans.

55. Defendants' fiduciary breach resulted in significant losses to the Plans and their participants in the form of excessive healthcare expenses, including through payroll deductions and lost compensation.

56. Each Defendant is liable for the losses that resulted from these fiduciary breaches, as well as equitable relief and other relief as provided by ERISA. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2)-(3).

**COUNT II**
**(Breach of Duty of Loyalty Under ERISA Against All Defendants—**
**29 U.S.C. §§ 1104(a)(1)(A), 1109, 1132(a)(2)-(3))**

57. Plaintiffs incorporate by reference the allegations in paragraphs 1-48.

58. Defendants are or were fiduciaries of the Plans under 29 U.S.C. §§ 1002(21).

59. 29 U.S.C. § 1104 imposes a fiduciary duty of loyalty upon Defendants in connection with the administration of the Plans and the selection and monitoring of the Plans' healthcare options.

60. Their fiduciary obligations require the communication of material facts to participants when it is known that Defendants' silence may be harmful to participants, whether or not the participant asks for this material information.

61. The duty to disclose material facts to participants is a requirement that arises under the general fiduciary duties imposed by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

62. Defendants breached their fiduciary duty by failing to communicate and disclose to participants that the BCBS National and the UHC Choice Plus options offered no financial benefit to participants in comparison to the UHC Consumer Choice option despite having knowledge, or otherwise being required to have knowledge, of this material fact.

63. Defendants' fiduciary breach resulted in significant losses to the Plans and their participants in the form of excessive healthcare expenses, including through payroll deductions and lost wages. Each Defendant is liable for the losses that resulted from these fiduciary breaches, as well as equitable relief as provided by ERISA. *See* 29 U.S.C. § 1109(a), 1132(a)(2-3).

**COUNT III**
**(Failure to Monitor Co-Fiduciaries Against Caterpillar—**
**29 U.S.C. §§ 1105, 1109, 1132(a)(2)-(3))**

64. Plaintiffs incorporate by reference the allegations in paragraphs 1-48.

65. Caterpillar is a fiduciary of the Plans with responsibilities relating to the selection and monitoring of the Plans' healthcare options.

66. Caterpillar is responsible for appointing and removing members of the Committees. Caterpillar may additionally delegate its fiduciary responsibilities to any other person, persons, or entity. Caterpillar therefore has a fiduciary responsibility to monitor the performance of the Committees and any other person, persons, or entity not named in the Complaint to whom Caterpillar has delegated such fiduciary responsibilities.

67. A monitoring fiduciary must ensure that its appointed fiduciaries are performing their fiduciary obligations, including those with respect to the administration of the Plans, and must take prompt and effective action to protect the Plans and their participants when they fail to perform their fiduciary obligations in accordance with ERISA.

68. Caterpillar breached its fiduciary monitoring duties by, among other things:

a. Failing to monitor and evaluate the performance of the fiduciary committees and any other delegated fiduciaries not named in the Complaint or have a system in place for doing so, standing idly as Class members incurred significant losses as a result of the imprudent actions and omissions of the committee and any other delegated fiduciaries not named in the complaint.

b. Failing to monitor the processes by which the Plans' healthcare options were selected, monitored, and retained, which would have alerted a prudent fiduciary to the breaches of fiduciary duties outlined above;

c. Failing to monitor the processes or systems of communication by which the committees and any other delegated fiduciaries not named in the Complaint used, or failed to use, to convey material facts to participants of the Plans; and

d. Failing to remove the members or any other delegated fiduciaries not named in the Complaint whose performance was inadequate in that they selected and retained imprudent healthcare options for the Plans, all to the detriment of the Plans and their participants.

69. As a consequence of the foregoing breaches of the duty to monitor, participants of the Plans suffered millions of dollars in lost wages by way of excessive premiums that provided no additional financial or medical benefit.

70. Pursuant to 29 U.S.C. § 1109(a), 1132(a)(2), and 1132(a)(3), Caterpillar is liable to restore the Plans and their participants all losses suffered as a result of the fiduciary breaches that resulted from its failure to properly monitor its appointed fiduciaries to the Plans.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, as representatives of the Class defined herein, and on behalf of the Plans, pray for relief as follows:

A. A determination that this action may proceed as a class action under Federal Rule of Civil Procedure 23(a) and 23(b)(1), or 23(b)(3);

B. Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C. A Declaration that Defendants have breached their fiduciary duties and other obligations under ERISA;

D. An Order compelling Defendants to make good to the Plans all losses resulting from their breaches of fiduciary duties and other violations and to restore to the Plans all profits Defendants made through use of the Plans' assets and all profits the Plans' participants would have made had Defendants fulfilled their fiduciary obligations and other responsibilities to the Plans;

E. Surcharge and other equitable relief to redress Defendants' illegal

practices and to enforce the provision of ERISA as may be appropriate;

F. An Order requiring Defendants to disgorge all profits received from the Plans, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, or a surcharge against Defendants necessary to effectuate said relief and prevent Defendants' unjust enrichment;

G. Actual damages in the amount of any losses the Plans suffered, to be allocated among the participants' individual accounts in proportion to individual account losses;

H. An Order enjoining Defendants from any further violations of their fiduciary responsibilities, obligations, and duties under ERISA;

I. Other equitable relief as may be appropriate to redress Defendants' illegal practices and to enforce the provisions of ERISA, including appointment of an independent fiduciary or fiduciaries to run the Plans and removal of the Plans' fiduciaries who are deemed to have breached their fiduciary duties;

J. An award of pre-judgment interest;

K. An award of costs pursuant to 29 U.S.C. § 1132(g);

L. An award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

M. Such other and further relief as the Court deems equitable and just.

## VIII. JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

Dated: August 4, 2026

*/s/ Matthew J. Langley*
Matthew J. Langley
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, IL 60614
Telephone: (773) 554-9354
Email: matt@almeidalawgroup.com

James E. Miller*
Laurie Rubinow*
**MILLER SHAH LLP**
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
lrubinow@millershah.com

Alec J. Berin*
**MILLER SHAH LLP**
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: ajberin@millershah.com

*Attorneys for Plaintiffs, the Plans, and the Proposed Class*

**Pro hac vice* application forthcoming